**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE POLYMEDICA CORP. SECURITIES LITIGATION | Civil Action No. 00-12426-REK AND ALL RELATED CASES |

**MEMORANDUM OF LAW IN SUPPORT OF
LEAD PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

Lead Plaintiff Dr. Thomas Thuma ("Lead Plaintiff" or "Dr. Thuma") submits this memorandum of law in support of his motion for an order (I) certifying this action as a class action, (ii) certifying a class (the "Class") consisting of all purchasers of Defendant Polymedica Corp. ("Polymedica") common stock from October 26, 1998 through August 21, 2001, inclusive (the "Class Period"), (iii) and appointing Dr. Thuma as Class Representative (collectively, the "Motion for Class Certification").

**PRELIMINARY STATEMENT**

This securities fraud class action arises out of the Defendants' material misrepresentations to the public concerning the business and financial results of Polymedica during the Class Period. Plaintiffs filed a Consolidated Complaint in October 2001 (the "Complaint"). As detailed in the Complaint, Defendants' misrepresentations caused the price of Polymedica stock to trade at artificially high prices during the Class Period, causing damages to Class Members. The Complaint alleges that Defendants' material misrepresentations were in violation of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78t(a), and Rule 10b-5, 17 C.F.R. § 240.10b-5, and seeks recovery of the damages suffered by Class Members. By an Order and Decision dated May 10, 2002, this Court denied Defendants' Motion to Dismiss the Complaint.

The Motion for Class Certification should be granted because this litigation meets each of the requirements of Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure. First, the

numerosity requirement of Fed. R. Civ. P. 23(a)(1) is met because there are at least thousands of Class Members, who, like the Lead Plaintiff, purchased Polymedica common stock during the Class Period, and have suffered financial losses as a result. Second, there are common questions of law and fact under Fed. R. Civ. P. 23(a)(2) because the Complaint alleges that all Class Members were harmed by the same or similar conduct, i.e., Defendants' alleged violations of the Securities Exchange Act of 1934 through material misrepresentations concerning Polymedica's business and financial results. Third, Dr. Thuma's claims are "typical" of the claims of the Class under Fed. R. Civ. P. 23(a)(3) because Dr. Thuma, like all Class Members, purchased his shares of Polymedica stock at artificially inflated prices due to Defendants' securities law violations, and suffered damages as a result thereof. Fourth, Dr. Thuma will fairly and adequately represent the interests of the Class under Fed. R. Civ. P. 23(a)(4) because his claims are not antagonistic to the claims of the Class, and he has retained competent counsel. Finally, the litigation also meets the requirements of Fed. R. Civ. P. 23(b) because common issues predominate over any individual issues, and because the prosecution of this class action litigation is the only real opportunity for Class Members to recover damages for Defendants' wrongdoing.

## ARGUMENT

### A.   General Legal Principles Applicable to Class Certification

Class certification is a two-step analysis under Rule 23 of the Federal Rules of Civil Procedure. First, the proposed Class Representative must meet the requirements of Fed. R. Civ. P. 23(a)(1)-(4), commonly known as "numerosity," "commonality," "typicality" and "adequacy." Fed. R. Civ. P. 23(a)(1)-(4); Smilow v. S.W. Bell Mobile Sys., Inc., 323 F.3d 32, 38 (1st Cir. 2003) (citing Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 613 (1997)). Second, the proposed Class Representative needs to satisfy one of the three requirements of Fed. R. Civ. P. 23(b), which Plaintiffs can satisfy by establishing (I) that questions of law or fact common to the

members of the class predominate over any questions affecting only individual members and (ii) that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Fed. R. Civ. P. 23(b)(3); Bussie v. Allmerica Fin. Corp., 50 F. Supp. 2d 59, 69 (D. Mass. 1999).

Class actions have long been considered a necessary and effective vehicle for resolution of securities law claims.  See Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 809 (1985) (class actions allow the "plaintiff to pool claims which would be uneconomical to litigate individually . . . [M]ost of the plaintiffs would have no realistic day in court if a class action were not available").  "Courts have expressed a general preference for class certification in securities fraud cases, based on a policy favoring enforcement of the federal securities laws, and recognition of the fact that class actions may be the only practicable means of enforcing investors' rights."  Priest v. Zayre Corp., 118 F.R.D. 552, 553-54 (D. Mass. 1988) (citations omitted).  Due to the importance of the class action device in securities fraud suits, courts have uniformly held that Fed. R. Civ. P. 23 is to be construed liberally in such cases.  Lessard v. Metropolitan Life Ins. Co., 103 F.R.D. 608, 610 (D. Me. 1984) ("Rule 23(a) should be liberally construed in order not to undermine the policies underlying the class action rule.").  The determination on whether a class should be certified is not an inquiry into the merits of the plaintiff's case, but is limited to whether the allegations in the Complaint satisfy the requirements of Fed. R. Civ. P. 23.  Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 178 (1974); Priest, 118 F.R.D. at 554 ("Class certification is not an appropriate stage at which to address the merits of the lawsuit.").  In a doubtful case, any error, if there is to be one, should be committed in favor of allowing a class action.  Payne v. Goodyear Tire & Rubber Co., 216 F.R.D. 21, 25 (D. Mass. 2003).

As discussed below, class certification is appropriate in this case and the Motion for Class Certification should be granted.

### 1. The Requirements Of Fed. R. Civ. P. 23(a) Are Satisfied.

Each of the requirements contained in Fed. R. Civ. P. 23(a) has been satisfied in this action.

#### a. The Class Is So Numerous That Joinder Of All Members Is Impracticable.

The "numerosity" requirement under Fed. R. Civ. P. 23(a)(1) has been met here because the number and diverse location of putative class members renders it impractical to join all of the Class Members in one lawsuit. In determining whether a proposed class meets the numerosity requirement under Fed. R. Civ. P. 23(a)(1), "courts may draw reasonable inferences from the facts presented to find the requisite numerosity." McCuin v. Secretary of Health & Human Servs., 817 F.2d 161, 167 (1st Cir. 1987). Courts generally assume that the numerosity requirement is met in cases involving nationally traded securities. Kirby v. Cullinet Software, Inc., 116 F.R.D. 303, 306 (D. Mass. 1987) ("[W]e are entitled to make 'common sense assumptions' in order to support a finding of numerosity."). In this case, although the exact size of the Class is not yet known, the facts alleged in the Complaint establish the numerosity requirement. The Complaint alleges that there are thousands of members of the Class located throughout the United States, and that during the Class Period, Polymedica stock was actively traded on the National Association of Securities Dealers Automated Quotation (NASDAQ) National Market System or the American Stock Exchange. The Complaint alleges that as of October 2001, approximately 12 million shares were outstanding. From these factual allegations, it can be strongly inferred that the size of the Class is sufficiently numerous that it would be impractical to join all of the claims of Class members in one lawsuit. See Kirby, 116 F.R.D. at 306; see also Guckenberger v. Boston Univ., 957 F. Supp. 306, 325 (D. Mass. 1997) (numerosity met where class size was only 480 members).

**b.     There Are Common Issues of Law and Fact.**

The "commonality" requirement under Fed. R. Civ. P. 23(a)(2) has also been satisfied. It is well-settled that the "commonality" requirement is satisfied where the Complaint alleges common legal or factual issues. Priest, 118 F.R.D. at 554. Here, the Complaint alleges the following common questions of law and fact that exist as to all members of the Class:

(i)     whether Defendants misrepresented and/or failed to disclose material facts in the Company's press releases, annual reports, and quarterly reports;

(ii)    whether Defendants' conduct violated the federal securities laws;

(iii)   whether the material misrepresentations artificially inflated the price of Polymedica stock during the Class Period; and

(iv)   whether the Class has sustained damages, and the measure of such damages.

Such common questions have been previously found sufficient to establish commonality in this district. See Priest, 118 F.R.D. at 554; Kirby, 116 F.R.D. at 306.

**c.     Lead Plaintiff's Claims Are Typical of the Claims of the Class.**

Dr. Thuma has also met the typicality requirement of Fed. R. Civ. P. 23(a)(3), as his claims are typical of the claims of the absent Class members. Dr. Thuma, like the absent Class members, purchased his Polymedica stock during the Class Period at prices that were artificially inflated due to Defendants' material misrepresentations, and suffered losses as a result thereof. In addition, Dr. Thuma's claims are based upon the same facts and legal theories as the rest of the Class. So long as there is a nexus between the class representative's claims and the common questions of fact or law that unite the class, typicality is satisfied. Priest, 118 F.R.D. at 555 ("With respect to typicality under Rule 23(a)(3), plaintiffs need not show substantial identity between their claims and those of absent class members, but need only show that their claims

5

arise from the same course of conduct that gave rise to the claims of the absent members.") (quoting In re Elscint, Ltd. Sec. Litig., Civ. No. 85-2622-K, slip op. at 18 (D. Mass. June 22, 1987) (Keeton, D.J.)). Factual differences do not render a claim atypical if the claim arises from the same event, practice, or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory. Wilcox v. Petit, 117 F.R.D. 314, 318 (D. Me. 1987).

### d. Lead Plaintiff Will Fairly and Adequately Represent the Interests of the Class.

It is well-settled that a proposed Class Representative satisfies the "adequacy" requirement under Fed. R. Civ. P. 23(a)(4) where the proposed Class Representative (I) does not have interests that are antagonistic to the interests of the Class and (ii) has retained qualified counsel. Kirby, 116 F.R.D. at 308; see also Priest, 118 F.R.D. at 556 ("Inquiries into the adequacy of representation should focus on the named plaintiffs' ability to prosecute the action vigorously through qualified counsel and their lack of conflicting interest with unnamed class members.") (quoting In re Elscint, slip op. at 19).

Dr. Thuma will fairly and adequately represent the interests of the Class under Fed. R. Civ. P. 23(a)(4). First, Dr. Thuma's interests are perfectly aligned with the interests of the Class. Like all Class members, Dr. Thuma purchased Polymedica stock at prices that were inflated by Defendants' securities law violations, and Dr. Thuma seeks to prove that the same wrongdoing that caused his damages also caused the damages suffered by the Class. Second, as evidenced by the resumes attached as Exhibit A, Dr. Thuma has retained counsel with substantial expertise in class action litigation, thereby insuring that the litigation will be vigorously prosecuted. Indeed, the counsel selected by Lead Plaintiff have already demonstrated for over three years that they will vigorously prosecute this case, by, among other things, overcoming a complex motion to dismiss the Amended Complaint, reviewing hundreds of thousands of pages of documents,

conducting an extensive investigation, and discovering additional misrepresentations.

In addition, the testimony from Defendants' deposition of Dr. Thuma demonstrates that Dr. Thuma will adequately – and vigorously – represent the interests of the Class. First, Dr. Thuma (a well-respected dentist who lost over $45,000 due to Defendants' wrongdoing) has extensively participated in and monitored the litigation to date. Dr. Thuma testified that since the commencement of the litigation, he has devoted at least 40-60 hours to discharging his duties as a lead plaintiff in connection with this litigation, including reviewing pleadings and other documents, discussing the progress of the litigation with Class Counsel, and participating in discovery-related activities. Deposition Transcript of Thomas Thuma, Oct. 27, 2003, at 29, 32, 95, 108, 117-19, 125-27 (hereinafter "Thuma Depo., at ___").

Second, Dr. Thuma exhibited an excellent understanding of his duties and responsibilities as a lead plaintiff and class representative. Dr. Thuma testified that: "As a lead plaintiff, I have to act in the best interest of the class; I have to be willing to testify; I have to be knowledgeable of how the case is being handled and available to consult on any matters concerning the case." Thuma Depo., at 107. Similarly, Dr. Thuma explained that: "As a class representative, I have to act in the best interests of the class. I have to be willing to testify. I have to be knowledgeable enough to understand the lawsuit. I have to consult on a regular basis with my attorneys to follow the course of the lawsuit, and I consult on important matters." Thuma Depo. at 142.

Third, Dr. Thuma exhibited an excellent understanding of the claims and allegations in the litigation. When asked to describe his understanding of how Polymedica had wronged him, Dr. Thuma testified the "I believe [the Defendants] gave false information to the Securities and Exchange Commission and released false press releases which inflated their earnings and their sales and, therefore, artificially influenced the price set by the market." Thuma Depo., at 109; see Thuma Depo., at 135 ("In my own words, I feel that Polymedica filed false reports with the

SEC, false, misleading press releases, which led to an inflated price of the stock. They inflated sales and earnings, and as a consequence, I paid more for the stock than it was worth and had to sell it at quite a loss"). Dr. Thuma also correctly identified each of the Defendants (Thuma Depo., at 109), was able to explain which Defendants were added to the Amended Complaint (Thuma Depo., at 120), knew how the Class Period had been expanded during the litigation (Thuma Depo., at 133), and succinctly articulated the various roles of the individual Defendants. Thuma Depo., at 123-24, 136. Dr. Thuma also correctly identified where and in which Court this case was pending and the name of the Judge. Thuma Depo., at 109.

Finally, Dr. Thuma demonstrated a thorough understanding of the nature of a class action. Dr. Thuma not only knew the dates of the Class Period (Thuma Depo., at 133), but correctly articulated the significance of the start and end dates of the Class Period, explaining that the Class Period began on the date when Polymedica began filing false information with the SEC and issuing false press releases, and ended on the date that the FBI raided Liberty Medical. Thuma Depo., at 134. Similarly, Dr. Thuma showed an understanding that only purchasers (and not holders) of Polymedica stock during the Class Period were eligible to become Class Members (when asked whether anyone who held Polymedica stock could be a class member, he replied: "Anyone who purchased during the class period and sold at a loss during – and/or sold at a loss during that class period is eligible to be a class member") (Thuma Depo., at 140), and explained that a Class Member could choose to "opt out" of the lawsuit. Id. Dr. Thuma also correctly described the manner in which Class Counsel would be compensated if money was recovered for the Class. Thuma Depo., at 143-46.

### 2. The Requirements Of Fed. R. Civ. P. 23(b)(3) Have Been Met.

The requirements of Fed. R. Civ. P. 23(b)(3) have also been satisfied because common questions of law and fact predominate over individual questions, and a class action is superior to

other available methods for the fair and efficient adjudication of the controversy.

### a. Common Issues Predominate.

It is well-established that in determining whether common questions predominate, the Court's inquiry should be directed primarily toward the issue of liability. Indeed, "[w]here, as here, common questions predominate regarding liability, then courts generally find the predominance requirement to be satisfied." Smilow, 323 F.3d at 40; In re Relafen Antitrust Litig., 218 F.R.D. 337, 345 (D. Mass. 2003) (quoting same). When common questions represent a significant aspect of a case and they can be resolved in a single action, class action status is appropriate. See 7A Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d, § 1788 at 528 (1986). The common questions, however, need not be dispositive of the entire action, because "predominate" as used in Fed. R. Civ. P. 23(b)(3) should not be equated with "determinative." See Smilow, 323 F.3d at 39 ("Rule 23(b)(3) requires merely that common issues predominate, not that all issues be common to the class").

In this case, common issues predominate over individual questions because Defendants issued materially false statements during the Class Period concerning Polymedica's business and financial results that were directed at the investors and the financial markets, which resulted in an artificially inflated market price of Polymedica stock. Therefore, the central theory of recovery is common for all Class Members. See, e.g., Kirby, 116 F.R.D. at 311 (common questions of law and fact predominate where claim is based on "fraud-on-the-market" doctrine).

### b. A Class Action Is Superior To Individual Actions.

Additionally, a class action is superior to other available methods for the fair and efficient adjudication of this controversy because, absent a class action, this Court would be faced with the daunting task of litigating potentially hundreds or thousands of lawsuits:

> [T]he benefits to the large number of class members, many of

9

> whose claims are so small that their size does not provide the impetus to bring individual actions, clearly outweigh any problems which may arise in the management of the class action. Economy will undoubtedly be achieved. Not only economy which will benefit members of the class, but economy which will benefit the judicial system as well.

Kirby, 116 F.R.D. at 311 (quoting Berenson v. Faneuil Hall, 100 F.R.D. 468, 471 (D. Mass. 1984)); see also Smilow, 323 F.3d at 41 ("The core purpose of Rule 23(b)(3) is to vindicate the claims of ... groups of people whose individual claims would be too small to warrant litigation."); Amchem Prods., 521 U.S. at 617 ("While the text of Rule 23(b)(3) does not exclude from certification cases in which individual damages run high, the Advisory Committee had dominantly in mind vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all."); Mace v. Van Ru Credit Corp., 109 F.3d 338, 344 (7th Cir. 1997) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor."); Deposit Guar. Nat'l Bank v. Roper, 445 U.S. 326, 338 n.9 (1980) ("A significant benefit to claimants who choose to litigate their individual claims in a class-action context is the prospect of reducing their costs of litigation, particularly attorney's fees, by allocating such costs among all members of the class who benefit from any recovery.").

## **CONCLUSION**

For the reasons discussed above, Dr. Thuma respectfully requests that this Court grant his motion for an order (I) certifying this action as a class action, (ii) certifying a Class consisting of all purchasers of Polymedica common stock from October 26, 1998 through August 21, 2001, inclusive (the "Class Period"), and (iii) appointing Dr. Thuma as Class Representative.

Dated: January 28, 2004               Respectfully submitted,

                                      By his attorneys,


                                      /s/Theodore M. Hess-Mahan
                                      Thomas G. Shapiro (BBO # 454680)
                                      Theodore M. Hess-Mahan (BBO # 557109)
                                      Shapiro Haber & Urmy LLP
                                      75 State Street
                                      Boston MA 02109
                                      (617) 439-3939


                                      /s/ Justin S. Kudler
                                      Andrew M. Schatz (*pro hac vice*)
                                      Jeffrey S. Nobel (*pro hac vice*)
                                      Justin S. Kudler (BBO # 644824)
                                      Schatz & Nobel, P.C.
                                      330 Main Street
                                      Hartford, CT 06106
                                      (860) 493-6292

                                      Co-Lead Counsel for Plaintiffs

Stanley M. Grossman
Pomerantz Haudek Block
 Grossman & Gross LLP
100 Park Avenue
New York, NY 10017-5516
(212) 661-1100

Richard Bemporad
Lowey Dannenberg
 Bemporad & Selinger, P.C.
The Gateway
One North Lexington Avenue
White Plains, NY 10601-1714
(914) 997-0500

Counsel for Plaintiffs